**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

MARIO HANNA, *et al.*,                                        :
                                  Plaintiffs,                :
                                                             :
                  v.                                         :
                                                             :
PALISADES PROPERTY & CASUALTY          :
INSURANCE COMPANY                           :          Civil No. 5:23-cv-01051-JMG
trading as                                                   :
PLYMOUTH ROCK ASSURANCE CORP.       :
doing business as                                       :
PLYMOUTH ROCK ASSURANCE CORP.,    :
                                  Defendant.              :

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                          **June 21, 2023**

Plaintiffs Mario Hanna and Josephine Evola filed a Complaint alleging breach of contract and bad faith causes of action against Defendant Palisades Property and Casualty Insurance Company.  Plaintiffs' claims arise from alleged insured losses relating to a fire at their residence. Plaintiffs contend Defendant improperly denied Plaintiffs payment of any and all losses related to the fire at the property.  Defendant moves to dismiss Plaintiffs' claims due to Defendant's reasonable basis to deny coverage.   Specifically, Defendant contends its denial of coverage was warranted because Plaintiffs made material misrepresentations throughout the coverage investigation process.

For the following reasons, Defendant's Motion to Dismiss is granted in part concerning Plaintiffs' bad faith claim and denied in part concerning Plaintiffs' breach of contract claim. Accordingly, Plaintiffs' bad faith claim is dismissed without prejudice.

1.  **FACTUAL BACKGROUND**

On March 17, 2023, Plaintiffs Mario Hanna and Josephine Evola filed a two-count Complaint containing two causes of action against Defendant: (1) breach of contract and (2) bad faith.  Plantiffs' asserted claims arise from Plaintiffs' alleged insured losses relating to a fire event at their residence.  *See generally* Compl., ECF No. 1.

Plaintiffs lived in a residential property in Nazareth, Pennsylvania owned by Plaintiff Hanna.  *Id.* ¶¶8, 10.  Plaintiffs entered into a homeowners insurance policy ("the Policy") with Defendant Palisades Property and Casualty Insurance Company to insure Hanna's property in Nazareth. *Id.* ¶¶15-16.  The Policy, policy number PNH00002034945, became effective on August 31, 2021, until August 31, 2022.  *Id.* ¶16.  The Policy provided coverage of, inter alia, Plaintiffs' dwelling, other structures, personal property, and loss of use.  *Id.* ¶17 (citing Ex. A, ECF No. 1 at 1) (Homeowners Policy Declarations Page).  Plaintiffs allege they consistently paid all premiums due under the Policy.  *Id.* ¶19.

On June 5, 2022, a fire occurred at Hanna's property.  *Id.* ¶20.  The fire damaged the property and its contents.  *Id.* ¶25.   Plaintiffs allege the fire rendered the property uninhabitable. *Id.* ¶27.  Upon consulting a representative for Defendant, Plaintiffs learned their Policy covered alternative living expenses under the "loss of use section." *Id.* ¶¶28-29.  Plaintiffs then decided to temporarily move into a property owned by Plaintiff Evola's stepparents.  *Id.* ¶30.

On June 14, 2022, Plaintiffs began working with "a public adjusting firm, Insurance Adjustment Bureau, Inc. ('IAB'), to assist in the loss claims" concerning the fire at Plaintiffs' property.  *Id.* ¶33.  On behalf of Plaintiffs, IAB requested Defendant adjust Plaintiffs' claim due to the fire's displacement of Plaintiffs. *Id.* ¶34.  "Accordingly, on June 24, 2022, Plaintiffs, through IAB, forwarded a lease to Defendant for Plaintiffs' temporary housing of Evola's parent's home."

*Id.* ¶35.  Plaintiffs contend their insurance policy with Defendant covered Plaintiffs' temporary living situation.

Concerning their insurance claim, Plaintiffs participated in an interview conducted by Defendant on July 20, 2022.  *Id.* ¶38.  Plaintiffs aver they "answered any and all questions Defendant's representative had, including . . . their living arrangements after the Fire Event."  *Id.* ¶39.  Following the interview, Plaintiffs allege they "reserved the right to make corrections to their statements after they received and reviewed the [interview] transcripts."  *Id.* ¶40.  Plaintiffs also submitted a "statement of loss" to Defendant related to Plaintiffs' insurance claim.  *Id.* ¶41.  The statement of loss included damages related to property reconstruction and personal property.  *Id.* ¶43-46.  Plaintiffs contend they only received $15,000.00 as a payment under their loss, even though their estimated loss valuations greatly exceeded this payment.  *Id.* ¶¶43-47.

Then, on August 18, 2022, Plaintiffs submitted written corrections to their earlier interviews with Defendant.  *Id.* ¶48.  Defendant had not solicited any written corrections.  *Id.* Plaintiffs contend these corrections concerned their temporary living situation, including that "they and their family resided at Evola's stepfather's residence . . . with Evola's mother and stepfather" and, although Hanna provided Evola's stepfather Mr. Perrine with a check "for the 'first month's, last month's rent and security deposit[,]' Mr. Perrine had not deposited" the check.  *Id.* ¶49. Defendant then requested Plaintiffs provide "Examination[s] Under Oath . . ." concerning the fire and property insurance claim.  *Id.* ¶50.  Plaintiffs participated in the Examinations Under Oath, and "answered questions . . . concerning the Fire Event, Plaintiffs' financial position, living arrangements after the Fire Event and any other topic Defendant sought to inquire about."  *Id.* ¶55.

"On October 12, 2022, Plaintiffs provided written notice to Defendant that they were withdrawing their 'Loss of Use' portion of the claim for additional living expenses."  *Id.* ¶56.

3

Later that day, Plaintiffs submitted "'Sworn Statement[s] in Proof of Loss' for their 'Personal Property' loss and their 'Dwelling' loss from the [f]ire." *Id.* ¶57.

On December 29, 2022, "Defendant provided Plaintiffs and IAB with a correspondence from [Defendant's] counsel denying the payment of any and all losses related to the Fire Event." *Id.* ¶60. Plaintiffs responded and "request[ed] . . . Defendant reconsider its position concerning the complete denial of the Plaintiffs' claim." *Id.* ¶61; *see also id.* ¶62 (characterizing Defendants' denial of Plaintiffs' claim as "legally incorrect and factually flawed"). Defendant did not alter its decision to deny Plaintiffs' claim. *Id.* ¶64.

Therefore, on March 17, 2023, Plaintiffs filed a Complaint alleging breach of contract and bad faith claims against Defendant. *See generally id.* Plaintiffs aver Defendant breached the Parties' contract concerning insurance coverage under Plaintiffs' Policy. *Id.* at 10. More specifically, Plaintiffs aver "Defendant . . . wrongfully refused and/or failed to pay related losses, reasonable and necessary, relating to and arising from the" fire at Plaintiffs' property. *Id.* ¶84. So "Defendant's failure to pay for the aforesaid losses violates and breaches the terms of the insurance policy and contractual obligations to" Plaintiffs. *Id.* ¶90. Plaintiffs also assert Defendant's refusal to compensate Plaintiffs for their losses amounts to bad faith under Pennsylvania's bad faith statute. *Id.* at 12; *see also* 42 Pa. Cons. Stat. § 8371 (1990). Plaintiffs submit Defendant acted in bad faith by, inter alia, "refus[ing] and/or fail[ing] to evaluate and pay Plaintiffs' claim for losses covered under their [insurance] policy"; 'ha[ving] no reasonable basis for denying payment of all or part of the claimed losses"; and "failing to adopt and implement reasonable standards for investigation and handling of loss claims[.]" *Id.* ¶101.

On April 26, 2023, Defendant moved to dismiss Plaintiffs' claims of both breach of contract and bad faith. *See generally* ECF No. 9-1. In support of Defendant's denial of coverage,

Defendant avers Plaintiffs misrepresented material facts concerning their temporary living situation following the fire event to Defendant during the insurance coverage investigation. *Id.* at 31-33.   Thus, Defendant points to a provision in the Policy providing Defendant may deny coverage where Plaintiffs conceal facts or provide misrepresentations of material facts and circumstances "before or after a loss." *Id.* at 31 (citing Ex. 1, ECF No. 9-4 at 29) (providing the Policy provision concerning concealment or fraud); *see also* ECF No. 1 at 35.   Accordingly, Defendant contends they had a reasonable basis to deny Plaintiffs coverage, so (1) Plaintiffs' "bad faith" claim cannot survive, and (2) Plaintiffs' breach of contract claim should be denied based on Plaintiffs' alleged misrepresentations. *See* ECF No. 9-1 at 34, 41.   In support of its Motion to Dismiss, Defendant attaches numerous exhibits—such as transcripts of Plaintiffs' interviews with Defendant allegedly containing misrepresentations—and requests the Court consider these external documents to find Plaintiffs made misrepresentations under the Policy and dismiss Plaintiffs' claims. *See* ECF No. 9 at 2-3 (identifying external documents attached as exhibits to Defendant's Motion to Dismiss).

In their response, Plaintiffs contend the Court should not consider the external documents attached to Defendant's motion.   ECF No. 10-1 at 10.   Plaintiffs also submit they did not provide material misrepresentations under the policy and thus, Defendant does not have a reasonable justification to deny all benefits under the policy. *See id.* at 12.   In sum, Plaintiffs aver they have adequately pled their two causes of action. *See generally id.*

## 2.  LEGAL STANDARD

Defendant in this case moves to dismiss Plaintiffs' Complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008).

Federal courts within the Third Circuit deploy a three-step analysis when faced with motions to dismiss. First, the Court identifies "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Next, the Court identifies "allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court assumes the veracity of well-pleaded factual allegations, "and then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). For purposes of this analysis, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## 3. DISCUSSION

Defendant avers Plaintiffs' claims of breach of contract and bad faith should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Court will consider Defendants averments concerning each claim in seriatim.

### a. Defendant's Motion to Dismiss Plaintiffs' Breach of Contract Claim

#### i. The Court Declines Consideration of Defendant's External Documents Not Integral to or Explicitly Relied Upon in Plaintiffs' Complaint.

Defendant attaches several documents as exhibits to its Motion to Dismiss, including, inter alia, the Parties' homeowners policy declarations page, homeowners terms and conditions, Plaintiffs' proffered lease concerning temporary housing, transcripts of Plaintiffs' recorded statements to Defendant, and transcripts of the Plaintiffs' Examinations Under Oath. *See* ECF No. 9 at 2-3. Defendant relies on these documents to support its averment "Plaintiffs have no claim under the [insurance] policy because of their material misrepresentations during the claims process; therefore Count I, asserting [b]reach of [c]ontract must be dismissed." ECF No. 9-1 at 28.

"In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Nevertheless, "[c]onsideration of the content of documents to which a Complaint makes reference in deciding a Rule 12 motion is, of course, appropriate." *U.S. Fid. & Guar. Co. v. Tierney Assocs., Inc.*, 213 F. Supp. 2d 468, 470 n.2 (M.D. Pa. 2002) (citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert denied*, 510 U.S. 1042 (1994)). And the U.S. Court of Appeals for the Third Circuit has found "a court can consider a 'document *integral to or explicitly relied upon* in the complaint."[1]   Nevertheless, relying on external

---

[1] *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation and citation omitted)). In *In re Rockefeller*, the Court of Appeals further provided "[t]he rationale for these exceptions is that 'the primary problem raised by looking to documents outside the complaint –lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Id.* (citing *Burlington*, 114 F.3d at 1426) (internal quotation omitted)).

documents outside of these narrow exceptions may lead a district court to "conver[t]" a motion to dismiss by considering materials outside the pleadings and therefore "treating a motion to dismiss as a motion for summary judgment." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (finding Federal Rule of Civil Procedure 12(b) provides if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment as provided in Rule 56 . . . .").

Here, Defendants provide several documents not referenced or relied upon in Plaintiffs' Complaint, such as Plaintiffs' proffered lease concerning temporary housing, transcripts of the Plaintiffs' initial interviews with Defendant, and transcripts of the Plaintiffs' Examinations Under Oath. *See* ECF No. 9 at 2-3. In support of their Complaint, Plaintiffs attached as exhibits: an insurance declarations page, line items of expenses allegedly in connection with the Plaintiffs' insurance claims, written corrections to Plaintiffs' earlier statements to the insurance company, line item expense estimates concerning water and fire restoration services, Plaintiffs' written withdrawal of their "Loss of Use" portion of their claim for additional living expenses, Plaintiffs' sworn statements concerning their proof of loss claims, Defendant's letter from counsel informing Plaintiffs zero coverage would be available to Plaintiffs for this loss, and Plaintiffs' letter from counsel requesting Defendant's reconsider their allocation of zero coverage for Plaintiffs' claim. *See generally* ECF No. 1 at 16-38 (attached exhibits). In their Complaint, Plaintiffs do not explicitly rely on the external documents provided by Defendant. And, although Plaintiffs refer to certain facts such as Plaintiffs' statements given in initial interviews with Defendant, Defendants' coordinating transcripts are not "integral to or explicitly relied upon in the complaint." *U.S. Fid. & Guar. Co.*, 213 F. Supp. 2d at 470 n.2 (quoting *In re Burlington*, 114 F.3d at 1426 (internal quotation and citation omitted)). Accordingly, the Court will only consider "the facts

alleged in the complaint and its attachments without reference to other parts of the record." *Jordan*, 20 F.3d at 1261.

      ii.  <u>Defendant's Motion to Dismiss Plaintiffs' Breach of Contract Claim is</u>
          <u>Denied Because Plaintiffs' Factual Allegations are Sufficient.</u>

Plaintiffs bring a breach of contract claim against Defendant due to "Defendant's willful failure to pay Plaintiffs' insured losses relating to a fire event at their primary residence." ECF No. 10-1 at 1. The Court will first identify the elements of a breach of contract claim, identify Plaintiffs' factual allegations, assume the veracity of the allegations, and then determine whether the facts, as pled, plausibly give rise to Plaintiffs' relief. *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675).

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Here, Plaintiffs allege they "entered in a Homeowners Insurance Policy . . . with Defendant." ECF No. 1 at ¶16. And "[t]he Insurance Policy provided for covered losses due to, among other categories, fire loss damage to the Subject Premises and its contents." *Id.* ¶81. Plaintiffs allege they timely paid premiums under the Insurance Policy at issue. *Id.* ¶19. And, on June 5, 2022, a fire "severely damaged" Plaintiffs' property. *Id.* ¶20. Plaintiffs also allege "the Insurance Policy covered the Subject Property and its contents as a result of the fire and smoke damage." *Id.* ¶66. Therefore, Plaintiffs contend Defendant breached its duties under the Police by failing to pay and/or to properly adjust Plaintiffs' claims relating to the fire damage.

Plaintiffs' allegations of breach of contract are sufficient at this stage.  Plaintiff adequately alleges Plaintiff and Defendant entered into a contract in the form of an insurance policy.  *See Kahn v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 517 F. Supp. 3d 315, 320–21 (M.D. Pa. 2021) (quoting *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020) ("Under Pennsylvania law, courts interpreting insurance policies "are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder.").  And, assuming Plaintiffs' allegations are true and Defendant failed to provide coverage and/or adequately adjust Plaintiffs' claims relating to the fire damage, Plaintiffs sufficiently allege Defendant breached the contract at issue, resulting in damages.

Notably, in its Motion to Dismiss, Defendant only disputes Plaintiffs' allegations Defendant **breached** the alleged contract at issue.  *See* ECF No. 9-1 at 28.  Defendant asks the Court to find Plaintiffs have no claim under the Policy because they allegedly provided material misrepresentations during the claims process.  *Id.*  But, at this stage, Plaintiffs' allegations concerning coverage under the Policy are taken as true.  The mixed questions of fact and law raised by Defendant are better suited following discovery.  Thus, dismissal of Plaintiffs' breach of contract claim is not warranted.

### b.  Defendant's Motion to Dismiss Plaintiffs' Bad Faith Claim

Plaintiffs also bring a claim of bad faith against Defendant.  In sum, Plaintiffs allege Defendant acted in bad faith by, inter alia, "refus[ing] and/or fail[ing] to evaluate and pay Plaintiffs' claim for losses covered under their [insurance] policy"; 'ha[ving] no reasonable basis for denying payment of all or part of the claimed losses"; and "failing to adopt and implement reasonable standards for investigation and handling of loss claims[.]" ECF No. 1 ¶101.  Defendant contends Plaintiffs' bad faith clam should be dismissed "[b]ecause Plaintiffs have failed to plead

any facts that could support a finding that [Defendant's] denial of coverage was frivolous or unfounded." ECF No. 9-1 at 34.

Plaintiff seeks to recover under Pennsylvania statute 42 Pa. Cons. Stat. § 8371, "which provides a statutory remedy for bad faith conduct by insurers and allows courts to award interest, punitive damages, and court costs and attorney fees against the insurer." *Dietz v. Liberty Mut. Ins. Co.*, No. 2:20-CV-1239-MMB, 2020 WL 3414660, at *2 (E.D. Pa. June 22, 2020) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) ("'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy.... For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.") (internal citation omitted)).

"District courts in the Third Circuit evaluate the sufficiency of bad faith claims using the Terletsky test, which requires a plaintiff to allege that the defendant insurer (1) did not have a reasonable basis for denying benefits; and (2) knew or recklessly disregarded its lack of a reasonable basis." *Id.* at *3 (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 234 (3d Cir. 1997) (internal quotation omitted)). So, "[a]pplying the Terletsky test to different types of insurance coverage disputes, district courts have 'routinely dismissed bad faith claims reciting only bare-bones conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss.'" *Id.* (quoting *Jones v. Allstate Ins. Co.*, No. 17-00648, 2017 WL 2633472, at *5 (E.D. Pa. June 19, 2017)). And "[a]pplying the plausibility standard to the bad faith claims arising in insurance coverage disputes, the Superior Court of Pennsylvania has specified that "bad faith must be proven

by clear and convincing evidence and not merely insinuated." *Id.* (quoting *Terletsky*, 649 A.2d at 688).

Here, Plaintiffs aver Defendant did not have a reasonable basis for denying them coverage under the Policy. In Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Plaintiffs contend denial of their bad faith claim is not warranted because Plaintiffs did not make material misrepresentations during the claim investigation process. *See* ECF No. 10-1 at 24-25. Plaintiffs also contend "Defendant's post denial conduct" is sufficient to show a claim of bad faith because Defendant failed to reconsider its denial of coverage and did not provide further factual or legal support for its position. *Id.* at 25. In their Complaint, Plaintiffs also allege Defendant: "[h]ad no reasonable basis for denying payment of all or part of the claimed losses; [f]orced Plaintiffs to file suit to recover such benefits; [f]ailed to adopt and implement reasonable standards for prompt investigation and payment of loss claims; [f]ailed to exercise the utmost good faith and discharge of its statutory and contractual duties to Plaintiffs; . . . [and] [e]ngaged in frivolous faulty and unfounded refusal to pay the losses." ECF No. 1 at 13.

Plaintiffs do not provide sufficient facts to support these allegations or otherwise plausibly show Defendant lacked a reasonable basis for the denial of coverage. In Plaintiffs' Complaint, they allege "a series of conclusory allegations" asserting Defendant unreasonably considered Plaintiffs' request for coverage and denied Plaintiffs' coverage. *Dietz*, 2020 WL 3414660, at *3; *see also* ECF No. 1 at 13. Plaintiffs' conclusory language and "naked assertions of insurance bad faith . . . are not entitled to the presumption of truth for purposes of resolving Defendant's Motion to Dismiss and must be supported by factual allegations." *Dietz*, 2020 WL 3414660, at *3.

Furthermore, "the factual averments that Plaintiff[s] rel[y] on are not sufficient to "raise a right to relief above the speculative level." *Id.* at *4 (quoting *Twombly*, 550 U.S. at 544, 555).

Plaintiffs do not provide specific factual allegations beyond Defendant's allegedly unreasonable denial of coverage and Plaintiffs averments their statements do not warrant denial of coverage. And "courts in the Third Circuit share the common understanding that a plaintiff cannot base a bad faith claim on the defendant's refusal to pay." *Id.* Moreover, concerning Defendant's reasoning behind denying Plaintiffs' claim, "Pennsylvania courts apply an objective test to the reasonable basis question: as long as a reasonable basis for denying the claim exists, even if it is not the actual basis relied upon by the insurance company, bad faith has not occurred." *Robbins v. Metro. Life Ins. Co. of Connecticut*, No. CIV A 08-0191, 2008 WL 5412087, at *8 (E.D. Pa. Dec. 29, 2008) (citing *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000), aff'd, 261 F.3d 495 (3d Cir. 2001)). Here, Defendant submits it had "a well-reasoned basis for the denial of [Plaintiff's] claim based upon an investigation into the material misrepresentations made by Plaintiffs during the investigation of the claim." ECF No. 9-1 at 39. And Plaintiffs' Complaint and its attachments show that: (1) Plaintiffs provided written corrections to their earlier statements to Defendant (*see* ECF No. 1 at 22, 23), and (2) Defendant cites to the Policy's concealment or fraud provision in its explanation of the claim denial (*see id.* at 35). Therefore, Plaintiffs' limited factual allegations do not show Defendant's acted in bad faith as "proven by clear and convincing evidence and not merely insinuated." *Dietz*, 2020 WL 3414660, at *3 (quoting *Terletsky*, 649 A.2d at 688).

## 4. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied in part and granted in part. Defendant's Motion to Dismiss is denied concerning Plaintiffs' Count I (Breach of Contract) claim. Defendant's Motion to Dismiss is granted concerning Plaintiffs' Count II (Bad Faith) claim. Accordingly, Plaintiffs' bad faith claim is dismissed without prejudice. Plaintiffs may file an amended complaint within fourteen (14) days of the date of the Court's accompanying Order. If

Plaintiffs fail to timely file an amended complaint, Plaintiffs' bad faith claim will be dismissed with prejudice.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge