IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIO HANNA, *et al.*,<br>            Plaintiffs,<br><br>      v.<br><br>PALISADES PROPERTY & CASUALTY<br>INSURANCE COMPANY<br>trading as<br>PLYMOUTH ROCK ASSURANCE CORP.<br>doing business as<br>PLYMOUTH ROCK ASSURANCE CORP.,<br>            Defendant. | Civil No. 5:23-cv-01051-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                      **March 31, 2025**

An insurance company may refuse payment to an insured who violates the "Concealment or Fraud" provision of their policy where the insured has (1) made a false representation, (2) the insured knew the representation was false when they made it, and (3) the misrepresentation was material to the risk being assured. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005). The question here is whether misrepresentations made by homeowner-Plaintiffs regarding their living arrangements following a fire in their home were material to Defendant-insurer's investigation of Plaintiffs' claim. Plaintiffs sued for breach of their insurance contract after Defendant refused to pay them. Defendant has brought a Motion for Summary Judgment before this Court, arguing Plaintiffs made material misrepresentations in violation of the "Concealment or Fraud" provision of their policy, which voided the contract. Since there exists a genuine dispute whether these represented facts were material to the claim being insured, Defendant's Motion for Summary Judgment is denied.

I. **BACKGROUND**

Prior to the events prompting litigation, Plaintiffs Mario Hanna and Josephine Evola lived together in a home in Nazareth, Pennsylvania with their three children. Pls.' Statement of Undisputed Facts in Supp. of Their Resp. to Def.'s Mot. For Summ. J. ("Pls.' SUMF"), at ¶¶ 1-2, ECF No. 38-14 at 1. Plaintiffs entered into a homeowners insurance policy ("Policy") effective from August 2021 until August 2022 with Defendant Palisades Property and Casualty Insurance Company. Certified Copy of the Policy, ECF No. 35-5 at 2. This Policy provided coverage for Plaintiffs' dwelling (Coverage A), other structures (Coverage B), personal property (Coverage C), and loss of use (Coverage D). *Id*.

On June 5, 2022, while the Policy was in effect, a fire on Plaintiffs' property rendered their home uninhabitable and destroyed all their possessions. Pls.' SUMF at ¶¶ 5-11; *Id*. at ¶ 19 (Defendant "was aware in June of 2022 that the Personal Property in the Subject Property at the time of the Fire Event was a total loss."). That same night, Plaintiffs reported the fire to Defendant's representative, Donna Moruzzi, and they discussed alternative living arrangements for Plaintiffs' family. *Id.* at ¶¶ 13-14. Plaintiffs informed Ms. Moruzzi that they would be temporarily moving into a property owned by Ms. Evola's mother and stepfather. *Id.* at ¶ 16.

Plaintiffs then consulted a public adjusting firm to assist them in securing payment for losses stemming from the fire event and facilitate their discussions with Defendant. *Id*. at ¶¶ 38-39. On June 24, 2022, Plaintiffs' public adjuster forwarded a lease to Ms. Moruzzi "for [Plaintiffs'] temporary housing, in the monthly amount of $4,950.00" and sought payment to cover Alternative Living Expenses ("ALE") which they were entitled to under the Policy. *Id.* at ¶¶ 40, 42; IAB Correspondence, ECF No. 35-6 at 1. The lease between Plaintiffs and Ms. Evola's stepfather, Joseph Perrine, allegedly began on June 5th, the date of the fire. Lease, ECF No. 35-7 at 1-2.

Approximately one month later, on July 20, 2022, Plaintiffs were asked to participate in recorded interviews conducted by Ms. Moruzzi which covered Plaintiffs' financial status at the time of the fire and their living arrangements after the fire. Pls.' SUMF at ¶¶ 43, 45. Mr. Hanna informed Ms. Moruzzi that since the night of the fire, himself, his wife, and their three children were the sole occupants of a house owned by his father-in-law, Mr. Perrine. Hanna Recorded Interview, ECF No. 35-8 at 7-9; *see id*. at 10 (when asked if Mr. Perrine currently lived in the house with Mr. Hanna and his family, he responded "[n]o."). Also during this interview, Mr. Hanna confirmed that the lease for this house was drawn up by Mr. Perrine who determined the rental price, and it was signed by both parties on the night of the fire. *Id*. at 7-8. Last, Mr. Hanna claimed he paid Mr. Perrine $14,850 for a security deposit and additional amounts for two months of rent. *Id*. at 9. Ms. Evola's statements in her recorded interview were nearly identical to Mr. Hanna's. Def.'s Statement of Material Undisputed Facts for the Mot. for Summ. J. ("Def.'s SUMF") at ¶ 21, ECF No. 34-1 at 6.

On August 18, 2022, twenty-nine days after their recorded interviews, Plaintiffs submitted written corrections to their recorded interview transcripts. Pls.' SUMF at ¶ 60; *see* Brief in Supp. of Pls.' Resp. to Def.'s Mot. for Summ. J. ("Pls.' Brief"), Exhibit I, ECF No. 38-9; Praecipe to Attach, Ex. A, ECF No. 35-4, at 22-23. These corrections included were: (1) that Ms. Evola's mother and stepfather who owned the home that Plaintiffs lived in were also living there with them, (2) that Mr. Perrine had never cashed the check for the first month's rent, last month's rent, and security deposit, and (3) that Mr. Hanna and Mr. Perrine drew up the lease agreement together and jointly determined the rental price. Pls.' SUMF at ¶¶ 62-64; Def.'s SUMF at ¶ 23. These corrections prompted Defendant's Special Investigations Unit to request an interview with Mr. Perrine, who "confirmed the statements made by Plaintiffs in the Recorded Interview as modified

3

by their Statement of Corrections concerning the residence drafting/signing of the Lease and the payment made by Hanna." Pls.' SUMF, at ¶ 68.

Then, on August 24, 2022, Defendant requested Plaintiffs to submit to Examinations Under Oath which took place on September 28, 2022. *Id*. at ¶¶ 69, 74. During said examinations, Plaintiffs confirmed the statements made in their corrections and Mr. Hanna additionally informed Defendant that the lease and check were drafted at some point in mid-June, but he backdated them to the night of the fire because that is when his family started staying at Mr. Perrine's house. Hanna Examination under Oath Tr., 13:1-13, ECF No. 35-10; *id*. at 14:17-23; *id*. at 15:21-16:4; *id*. at 23:19-25; *id*. at 24:1-6, 15-18; *id*. at 31:16-24. Plaintiffs allege that "[t]he facts provided in these **sworn** statements are unrefuted, and consistent with all other available evidence" and "Defendant does not claim . . . that anything testified to in these sworn statements were fraudulent or material misrepresentations." Pls.' SUMF at ¶ 76. Nonetheless, on October 12, 2022, Plaintiffs withdrew their "Loss of Use" claim for ALE. *Id*. at ¶ 77.

Despite this, on December 29, 2022, four months after Plaintiffs' Examinations Under Oath, Defendant informed them that "there was no coverage available to [Plaintiffs] for this loss" because Plaintiffs "concealed and misrepresented material facts in the presentation of the claim" and "violations of the 'Concealment or Fraud' provision of a policy act as total bar to an insured's recovery under the policy." ECF No. 35-4, at 32, 35; Pls.' SUMF at ¶ 81. Section Q of the Policy ("Concealment or Fraud Provision" or "Fraud and Concealment Provision") states that the provider does not provide coverage if the insured has (1) concealed or misrepresented any material fact or circumstance, (2) engaged in fraudulent conduct, or (3) made false statements, relating to this insurance. Def's. Brief in Supp. of Mot. for Summ. J. ("Def.'s Brief.") ECF No. 34-2 at 6.

Plaintiffs filed a two-count Complaint on March 17, 2023, for breach of contract and bad

4

faith. *See* Compl, ECF No. 1. Defendant's Motion to Dismiss was granted in part, and Plaintiffs' bad faith claim was dismissed on June 21, 2023. *See* Order, ECF 16. The Court held oral argument on Defendant's Motion for Summary Judgment on October 16, 2024. *See* Oral Argument Tr. ("ECF No. 47").

## II. STANDARD

### Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). The court must evaluate the entire record before it, "view[ing] all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor" and decide whether there remains a genuine issue of fact for trial. *Id.* (internal quotation marks and citation omitted); *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must designate specific facts beyond his or her pleadings to show that there is a genuine issue to be resolved at trial. *Id.* at 324; *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of*

*Pub. Welfare,* 402 F.3d 374, 379 (3d Cir. 2005) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. Of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## ANALYSIS

"Pennsylvania courts have long held that a violation of the fraud and concealment provision of an insurance policy serves as a complete bar to the insured's recovery under the policy," effectively voiding it. *State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.,* 533 F. Supp. 3d 268, 273 (E.D. Pa. 2021) (quoting *Millard v. Shelby Cas. Ins. Co.*, No. 3:CV-02-1902, 2005 WL 2035860, at *4 (M.D. Pa. Aug. 24, 2005))*; see Sack v. Glens Falls Ins. Co.*, 61 A.2d 852, 852-53 (Pa. 1984). An insurer who wishes to void a contract on the basis of a violation of the fraud and concealment provision has the burden of proving that: "(1) the insured made a false representation, (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith, and (3) the representation was material to the risk being insured." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) (citing *Shafer v. John Hancock Mut. Life Ins. Co.*, 410 Pa. 394, 398 (1963)); *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993). In addition, "Pennsylvania courts have repeatedly held that when an insurance company denies coverage based on alleged 'material misrepresentations made in the submission of the claim' it need only prove that the insured made material misrepresentations [in violation of the fraud and concealment provision] by a

6

preponderance of the evidence." *Am. Nat'l Prop. & Cas. Co. v. Felix*, 2018 WL 1747697, at *9 (W.D. Pa. Apr. 11, 2018); *Jackson v. Spinnaker Ins. Co.*, 2025 WL 317287, at *11 (W.D. Pa. Jan. 28, 2025). [1] "To establish a fact or claim by a preponderance of the evidence means to offer the greater weight of the evidence, or evidence that outweighs, or is more convincing than, by even the smallest amount, the probative value of the evidence presented by the other party." *Schmukler v. Pennsylvania Pub. Util. Comm'n*, 302 A.3d 247, 253 (Pa. Commw. Ct. 2023). In this motion, to prove that Plaintiffs made a material misrepresentation that voided the insurance contract, Defendant will need to establish the elements of falsity, knowledge, and materiality by a preponderance of the evidence. If Defendant can successfully show that the contract has been voided, Plaintiffs will be unable to prevail in their breach of contract claim. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 136 (3d Cir. 2005) ("It is axiomatic that a breach of contract claim may not be maintained in the absence of a valid contract.").

### A. Plaintiffs knowingly made false statements to Defendant.

It is beyond dispute that Plaintiffs made false statements to Defendant during their initial recorded interviews on July 20, 2022, in that these statements were not true. These misstatements regarded who was living in the temporary home with Plaintiffs after the fire, who drafted the lease agreement, and whether Mr. Perrine had cashed the check for Plaintiffs' security deposit and first and last months' rent. Plaintiff Hanna admitted in his Examination Under Oath that he backdated the lease and check to the day his family started living in Mr. Perrine's house on June 5, 2022, even though the lease and check were not actually drafted until the middle of the month. ECF No.

---

[1] The parties agreed at oral argument that this was the proper standard in the context of post-loss investigations, whereas the standard for proving material misrepresentation in the context of insurance applications is clear and convincing evidence. ECF No. 47, at 60:19-21, 78:6-9.

7

35-10, at 24:1-14. Additionally, Plaintiff Hanna conceded that he answered yes in his recorded interview to the question of whether he had complete custody of the house, although his father-in-law and mother-in-law had been living there with his family. *Id*. at 24:15-25:7. Finally, Mr. Hanna confirmed that the original check for his security deposit and first and last months' rent had never been cashed, despite his statement in his recorded interview that he could provide Ms. Moruzzi with a copy of the cancelled check. *Id*. at 31:23-25; ECF No. 35-8, at 9. Plaintiffs also conceded that these initial statements regarding living arrangements after the fire were incorrect at oral argument. ECF No. 47, at 29:1-5 ("There's a statement in there that relates to well, who are you living with? Oh, okay, that person there, the landlord, are you living alone? Yes, yes, yes. Admittedly, incorrect.").

Plaintiffs' brief responds to the allegation that they made knowingly false statements by saying that "[w]hen considering the recorded interview as modified by the subsequent notarized corrections, as Plaintiffs' statements concerning the ALE claimed loss, there was no false statements . . ." Pls.' Opp. to Mot. for Summ. J., ECF No. 38-13 at 11; ECF No. 47, at 30:13-18 ("So if we take that statement plus this, put it all together, all the facts are accurate. Everything they have in a statement that's finally notarized, finally verified as of August, is all true. There's nothing that is false in that statement."). The Court is not persuaded by this argument. When you add an ostensibly true statement to an initial false one, it does not make the first statement true. Plaintiffs made the statements in their recorded interviews and corrections nearly a month apart and have not pointed to any cases where a court has taken the position that separate statements can be construed in tandem for purposes of assessing their truthfulness. Even accepting that Plaintiffs reserved the right to correct their initial statements, the record supports only a finding that they knew their statements were inaccurate when they provided them to their insurance investigator.

When asked in her Examination Under Oath why she told the insurance company that she was renting the house from her mother and stepfather when they still lived there, Plaintiff Evola's only response was, "There is no reason. I don't know." Evola Examination Under Oath Tr. 35: 4-5, ECF No. 35-11. Plaintiffs have not put forth affirmative evidence of specific facts to demonstrate a genuine issue of material fact as to their knowledge of these false statements, as is their burden at summary judgment. They have not pointed to evidence that they were not aware that Ms. Evola's mother and stepfather were living under the same roof as them, that the date they assigned to the lease and check was not the same as the date they were written, or that Mr. Perrine never cashed their check for a security deposit and rent. The Court finds Defendant has established the elements of falsity and knowledge by a preponderance of the evidence, and no reasonable jury could find for Plaintiffs on this issue.

**B. A reasonable jury could disagree as to whether Plaintiffs' representations in their initial statements were material to the risk being insured.**

The materiality of these representations is far less clear than the initial two prongs and is the central point of dispute between the parties. To succeed in its motion for summary judgment as to this element, Defendant must "demonstrate that no genuine issue of fact exists as to whether [Plaintiffs] either represented or concealed a *material* fact relating to the[ir] insurance contract." *Paul v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 5407734, at *22 (W.D. Pa. Sept. 28, 2016) (emphasis added) (quoting *Parasco v. Pacific Indem. Co*., 920 F. Supp. 647, 652 (E.D. Pa. 1996)). "The question of materiality is generally considered one of fact and law, but if the facts are so obviously important that 'reasonable minds cannot differ on the question of materiality,' then the question becomes one that the court can decide at the summary judgment stage." *Tuschak v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2747061, at *3 (W.D. Pa. July 14, 2008) (quoting *Gould v.*

*American-Hawaiian S.S. Co.,* 535 F.2d 761, 771 (3d Cir. 1976)). A misrepresentation is material if a "reasonable insurance company, in determining its course of action, would attach importance to the facts misrepresented," and specifically in the context of a post-loss investigation, if the fact "'concerns a subject relevant and germane to the insurer's investigation as it was then proceeding.'" *Wezorek v. Allstate Ins. Co.*, 2007 WL 2264096, at *15 (E.D. Pa. Aug. 7, 2007) (quoting *Hepps v. Gen. Am. Life Ins.,* 1998 WL 564497 at *4 (E.D. Pa. Sept. 2, 1998)). "'A misrepresentation is also material if [it] may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate.'" *Goldsmith v. Nationwide Ins. Co.*, 2023 WL 7224156, at *5 (M.D. Pa. Nov. 2, 2023) (quoting *Peer v. Minnesota Mut. Fire & Cas. Co.*, 1995 WL 141899, at *10 (E.D. Pa. Mar. 27, 1995)).

Defendant points to *State Auto Prop. and Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.* to develop its argument on materiality. 533 F. Supp. 3d 268 (E.D. Pa. 2021), *aff'd*, No. 21-2435, 2022 WL 17076035 (3d Cir. Nov. 18, 2022). The insured in that case provided false figures to an insurance company investigating replacement costs of damaged automobile and audio equipment. *Id.* at 271. When the insurance company became suspicious of the figures provided, it requested supporting documentation to verify the claimed amounts. *Id*. The insured proceeded to submit fabricated vendor receipts, which he only admitted to altering during a subsequent examination under oath requested by the insurance company. *Id*. Finding that these misrepresentations were material to the insurance company's investigation, the district court emphasized the fact that the insurance company specifically requested the invoices from the insured to verify his claimed amount of loss. *Id.* at 275. This action made the insured directly aware that any information he provided in response to this request would be germane to the insurance

10

company's investigation and determination of the total amount of loss. *Id.* In another case in the Middle District of Pennsylvania, *Goldsmith v. Nationwide Insurance Co.*, where the plaintiff failed to inform the police department and his automobile insurance company during his investigation, initial interview, follow-up telephone calls, and Examination Under Oath spanning the course of five months that his daughter had been previously convicted of stealing his vehicle, the Court found this misrepresentation was material to his insurance claim for a stolen car because "a reasonable insurer would want to know whether the insured had any idea who may have stolen the car." 2023 WL 7224156 (M.D. Pa. Nov. 2, 2023). In both cases, the insureds never abandoned their false information, even after they were questioned about it and, more significantly, the material misrepresentations were related to the cause or amount of loss.

On the other hand, Plaintiffs cite to the court's decision in *Zell v. Federal Insurance Co.* Civ. No. 06-250, 2007 WL 1875803, at *5 (W.D. Pa. 2007). In *Zell*, the insurance company was investigating whether a piece of jewelry misplaced while the insured was on vacation was covered under their insurance policy. *Id.* at 2-3. To avoid getting in trouble for evading sales tax when she had the jewelry shipped to her vacation destination, plaintiff made misrepresentations in her initial recorded statements about whether she had the bracelet on her person during her travels. *Id.* However, she corrected this misstatement when she was asked by the insurance investigator about it three days later. *Id*. at 3. Although the court agreed with the insurance company's argument that the misrepresentation impeded its investigation, the court held that this mere delay causing the company to "have to take the time to uncover the truth of the matter" was not enough on its own to make the misrepresentation material. *Id.* at 9. The Court distinguished Ms. Zell's case from others in this District where "the insureds lied to conceal their motive to commit arson and collect on the policies." *Id*. at 7. *See, e.g., Parasco v. Pacific Indemnity Co.*, 920 F. Supp. 647, 654 (E.D.

11

Pa. 1996) (finding the insured's failure to mention that he submitted fraudulent tax returns to obtain a loan to purchase the home and was attempting to sell the home before the fire event were material misrepresentations to his insurance claim). Ms. Zell's misrepresentation was not material to her insurance claim because it "did not concern how the loss occurred, nor was it related to any conditions that may have existed in the policy." *Zell,* 2007 WL 1875803, at *8; *see Tuschak*, 2008 WL 2747061, at *3 (finding that a misrepresentation was material where it went to "the very cause of the loss").

Plaintiffs' case is factually distinguishable from *Goldsmith* and *Sigismondi* because Plaintiffs corrected their misstatements voluntarily prior to giving Examinations Under Oath, and they had not received explicit representations from Defendant that it was relying on these statements in the course of its investigation. The timing between Plaintiffs' misstatements and corrections, twenty-nine days, begs the question of whether these misrepresentations were relevant and germane to Defendant's investigation of their claim as it was then proceeding in its early stages. In addition, there was evidence of deception from the plaintiffs in *Goldsmith* and *Sigismondi* who were questioned multiple times by insurance investigators about their misrepresentations and refused to come clean. That is not the case here.

Like the plaintiff in *Zell*, Plaintiffs' misrepresentations did not concern the ultimate issue of the investigation: how the fire occurred. As Plaintiffs suggest, "[i]t is undisputed that the Fire Event caused the home to be uninhabitable, that the policy was in effect at the time, and coverage [under Coverages A, B, and C] was available for such loss expenses. The only questions [which their misrepresentations were related to] under the ALE claim would be the amount the Plaintiffs could receive for their temporary living arrangements [under Coverage D]." Pls.' Brief, ECF No. 38-13 at 15. Defendant argues that these misrepresentations were material because they impeded

its investigation and prompted a "drastic turn of events with [respect to the ALE] coverage" because it had to get its Special Investigations Unit involved to visit the home where Plaintiffs were living to confirm the accuracy of their corrected statements. ECF No. 47, at 80:6-19. However, despite these contentions from Defendant, testimony from its own representatives suggests otherwise.[2] Defendant continued to engage in its claims adjusting process for another four months after receiving Plaintiffs' corrected statements before ultimately rejecting their claims. Compl., Ex. I, ECF No. 1 at 32. The Court finds Plaintiffs have pointed to sufficient evidence to generate a genuine dispute of material fact as to whether the misrepresentations in their recorded interviews were material to Defendant's investigation as it was then occurring. Although "all misrepresentations can be said to impede an insurer's investigation in that the company might have to take the time to uncover the truth of the matter;" it is up to a jury here to decide if the imposition in this case involved a topic that was relevant and germane to Defendant's investigation of Plaintiffs' claim. *Zell,* 2007 WL 1875803, at *9.

Drawing all inferences in Plaintiffs' favor, this Court does not find that the misrepresented facts were "so obviously important" to Defendant's investigation to justify a determination on the issue of materiality at the summary judgment stage as a matter of law. Although Plaintiffs knowingly made false statements about their living arrangements, a reasonable jury could reach a finding that these statements were not material to Defendant's investigation. Therefore, the

---

[2] *See* Pls.' Resp. Def.'s SUMF at ¶¶ 36-38, ECF 38-15 at 7. Ms. Moruzzi admitted that "after knowing that Mr. Hanna and Ms. Evola were living with their in-laws" she "got the ALE vendor back involved" and continued to adjust the ALE claim as she normally would. Moruzzi Dep. Tr. 99:16-20, 100:7-8, ECF No. 35-12 at 26. When asked to explain how the fact that Plaintiffs lied about whether Ms. Evola's stepfather lived in the house was material to the adjusting process of Plaintiffs' claim, Mr. DeMarco, a former Palisades Claim Supervisor, responded: "[f]or A, B, and C it does not. For D, they lied." DeMarco Dep. Tr. 118: 1; 6-9. ECF No. 35-14 at 31. But, as we have discussed, materiality is a separate factor from knowing misrepresentation.

question of materiality remains a mixture of both law and fact that is best left to a jury to decide.

## III.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 34) is denied.  An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge